IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Cr. No. 20-104 |
| | ) |
| PARIS CARTER | ) |

### Opinion and Order on Motion to Suppress Evidence

Presently before the Court is Defendant Paris Carter's Motion to Suppress Evidence. ECF No. 100. Mr. Carter argues that an affidavit (CA Affidavit) supporting a search warrant issued by the Central District of California (CA Warrant) lacked probable cause; and therefore, subsequent warrants issued by the Western District of Pennsylvania (PA Warrants) were tainted. The Government has responded, arguing that the CA Warrant was valid, and that the valid PA Warrants independently justify the search of the challenged evidence. ECF No. 105. After careful review of the briefs and the challenged Affidavits and Warrants, the Motion will be denied.

**I. Background**

On February 28, 2018, Mr. Carter was arrested by Officers of the University of California Los Angeles Police Department in the Central District of California on state charges of false imprisonment and felony sexual battery. In their search incident to said arrest, Officers seized a loaded handgun and three iPhones. On March 1, 2018, Special Agent Jose Arellano of the Bureau of Alcohol, Tobacco, Firearms, and Explosives authored the CA Affidavit in support of his application to the federal court in California for the CA Warrant to search the three iPhones. ECF No. 100-1. The CA Affidavit was also written to support Mr. Carter's arrest on the federal criminal charge, Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1).

The CA Affidavit, in relevant part, sought authorization to search the three iPhones "for evidence, fruits, and instrumentalities" of violations of 18 U.S.C. § 922(g)(1). ECF No. 100-1, at ¶ 2. In said Affidavit, Agent Arellano reported that, in their search incident to Mr. Carter's arrest on California state charges, UCLA Police Officers recovered a loaded pistol and three iPhones. Id. at ¶¶ 5, 11.b. Agent Arellano also reported that Mr. Carter was a convicted felon. Id. at ¶¶ 5, 12. In Paragraph 15, he reported his knowledge of the following:

> a. People who are prohibited from owning guns but who own, sell, or buy guns often use digital devices, including mobile phones, to coordinate buying or selling those guns, and to promote their possession of guns to others. Such people often use calls, text messages, emails, social media, and messaging apps for these communications.
>
> b. People who are prohibited from owning guns but who own, sell, or buy guns often use digital devices, including mobile phones, to take photographs of the guns and of themselves with guns. They frequently send these photos to each other via text, email, social media, and messaging apps to boast of their firearms possession and/or to facilitate sales or transfers of firearms.
>
> c. People who purchase firearms illegally will often keep the contact information of the person who is supplying firearms to prohibited individuals for future purchases or referrals. Many people do not dispose of their firearms-related records; they usually keep their records for long periods, often spanning several years.

Id. at ¶ 15. Agent Arellano provides extensive presentation of his training and experience with digital devices and with forensic examination of the same. Id. at ¶ 16. Agent Arellano related that he believed that there was probable cause to believe that evidence of violations of 18 U.S.C. § 922(g)(1) would be found on the three iPhones. Id. at ¶ 16.

Independent from the above-described California state and federal criminal investigations and arrests, Mr. Carter had been under investigation for alleged drug trafficking and money laundering by agents from the United States Postal Inspection Service's Prohibited Mail Narcotics Team, the United States Custom and Border Control, and the Department of Homeland

Security. Said investigation culminated in the instant Indictment, wherein Mr. Carter is charged with one count of Conspiracy to Possess with Intent to Distribute and Distribution of 400 grams or more of Fentanyl and 100 grams or more of Acetyl Fentanyl, from January 2017 to February 2018; and one count of Conspiracy to Commit Money Laundering, from June 2017 to February 2018. ECF No. 8. The charges are, in part, based upon evidence seized pursuant to eleven December 7, 2018 PA Search Warrants. ECF No. 105 (Under Seal). These PA Warrants were issued based upon an Affidavit (PA Affidavit) in support of an application to search eleven cell phones recovered from Mr. Carter, three of which were the same iPhones that had been seized and searched in California pursuant to the CA Warrant. ECF No. 104 (Under Seal).

United States Postal Inspector Lindsay Weckerly authored the Pennsylvania Affidavit. She explained that "CARTER is believed to be directly involved in the packaging, diluting, and manufacturing of fentanyl and the laundering of the proceeds of that criminal activity in the Western District of Pennsylvania and the Central District of California." Id. at ¶ 4. Inspector Weckerly states that as "a result of my training and experience, I am aware individuals involved in distributing illegal drugs commonly store or retain evidence of their involvement in drug trafficking on their cellular telephones and other electronic devices, including but not limited to incoming/outgoing call logs, contact lists, text messages, photographs, videos, and voicemails." Id. at ¶ 6.

Turning to the Pennsylvania federal investigation of Mr. Carter, the PA Affidavit recounts law enforcement's observations and activities concerning the interception and subsequent tracking of internationally shipped parcels containing fentanyl intended to be delivered to addresses in the Pittsburgh area. Id. at ¶¶ 7-25. In tracking the delivery of one parcel, law enforcement learned that it was delivered to the residence of Mr. Carter's

grandmother. Id. at ¶ 17.  That package was picked up from the residence by an individual who drove it to Nolan Court in Homewood, Pennsylvania.  Id. at ¶ 12.  At Nolan Court, a second individual emerged from Mr. Carter's car, took control of the package, and transported it to a residence on Mohler Street.  Id. at ¶¶ 12, 17.  Pursuant to a search warrant, the Mohler Street residence was searched, revealing "numerous items of paraphernalia . . . including scales, fentanyl cut, stamp bags, a semiautomatic rifle," and a safe containing "ammunition and approximately 486 additional grams of fentanyl."  Id. at ¶ 12.  Inspector Weckerly averred that law enforcement knew that a high degree of coordination would have been required to facilitate the tracking, receipt, transfer, and delivery of the packages, and that such coordination requires extensive communication, typically through the use of cell phones.  Id. at 15.  Further, because the packages were also shipped internationally, determination of the delivery date would be difficult and not definitive without online tracking.  Id. at ¶ 16.  Online tracking also facilitates efficient and coordinated pick up and transfer of packages.  Id.

Inspector Weckerly further averred that Mr. Carter was originally from Homewood, Pennsylvania, but that he also maintained a residence in California.  Id. at ¶¶ 18, 20.  Law enforcement was able to intercept and then identify the tracking device IP address associated with five additional internationally shipped packages containing fentanyl.  Id. at ¶ 20.  The same IP address was also used to track two more packages shipped from the Pittsburgh area to Mr. Carter's residence address in California.  Id. at ¶¶ 20-21, 25.

The PA Affidavit documents extensive evidence of money laundering obtained through the Pennsylvania federal investigation.  Id. at ¶¶ 26-38.  Inspector Weckerly also documents extensive evidence garnered from Mr. Carter's social media accounts, which

demonstrated indicia of money laundering and drug trafficking. Id. at ¶¶ 39-40. She recounts facts about Mr. Carter's California arrest and about the search incident thereto, wherein the three iPhones at issue were seized. Id. at ¶ 41. She reports that said iPhones were transferred to the United States Postal Inspection Service Pittsburgh Field Office. Id. The eight other cell phones, identified within the PA Affidavit, had been seized pursuant to the California search of Mr. Carter's California residence, and they were also transferred to the Pittsburgh Field Office. Id. at ¶ 45. Inspector Weckerly also provides her relevant training and experience concerning drug trafficking, money laundering, firearms offenses, and digital devices. Id. at ¶¶ 46-47. Inspector Weckerly believed that there was probable cause that evidence of drug trafficking and money laundering would be found on the cell phones. Id. at ¶ 16.

## II.  Applicable Law

The Fourth Amendment of the United States Constitution protects the public from unreasonable searches and seizures. When making a probable cause determination, a magistrate must ascertain "whether there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Conley, 4 F.3d 1200, 1205 (3d Cir.1993) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal citations omitted)). The test, as set forth in Gates, requires that the issuing magistrate "make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" there is probable cause to support a warrant. Id. at 238. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." Id. at 236.

"The duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Gates, 462 U.S. at 236 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). "The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." Conley, 4 F.3d at 1208. A warrant must be upheld "as long as there is a substantial basis for a fair probability that evidence will be found." Id. at 1205. Reviewing courts must not "simply rubber stamp a magistrate's conclusions." United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir.1983).

### III. Discussion

Mr. Carter contends that the CA Affidavit lacks probable cause because it is based on general, boilerplate assertions, and because it lacks any specific factual averments to support a belief that evidence of violations of section 922(g)(1) would be found on the three iPhones. He argues that the CA Warrant was essentially a fishing expedition, because no additional evidence was needed to support the investigation of the California federal offense sought to be charged against Mr. Carter. That is, the California Affiant already knew that Mr. Carter was a convicted felon and that Mr. Carter was found in possession of a loaded firearm. Mr. Carter therefore argues that the evidence seized from the three iPhones must be suppressed. He further avers that evidence seized from the three iPhones was also used to secure several subsequent search warrants involving Mr. Carter, resulting in seizure of a "substantial amount of the prosecution's evidence" in the instant case. Def. Mot. Suppress, at ¶ 4. Mr. Carter argues that, since the CA Warrant is invalid, all evidence seized pursuant to subsequent search warrants are the "fruit of the poisonous tree" and must be suppressed. In response, the Government argues that the CA

Warrant is supported by probable cause. Alternatively, the Government argues that the PA Affidavit provides independent probable cause for the Pennsylvania Warrants.[1]

### A.     The California Affidavit

The CA Affidavit provided all known and necessary facts to establish probable cause to support the CA Warrant to search Mr. Carter's three iPhones. Mr. Carter focuses on the fact that when Agent Arellano applied for the search warrant, he already knew that Mr. Carter had a prior felony, and he knew that Mr. Carter had been arrested and found in possession of a loaded firearm. Mr. Carter argues that, since Agent Arellano had such information, he had all he needed to support a Criminal Complaint and arrest of Mr. Carter for violating section 922(g)(1), making the CA Warrant to search the three iPhones an unwarranted fishing expedition.

The CA Affidavit not only supports the Criminal Complaint, it also establishes probable cause for the CA Warrant to search said three iPhones. Rather than a fishing expedition, Agent Arellano identified the reasons why he believed evidence of a crime may be found on such devices. Specifically, knowing that Mr. Carter was a convicted felon prohibited from possessing a firearm and knowing that Mr. Carter nonetheless *did* possess a firearm, Agent Arellano explained his knowledge that such persons

- "often use digital devices, including mobile phones, to coordinate buying or selling those guns, and to promote their possession of guns to others,"
- "often use calls, text messages, emails, social media, and messaging apps for these communications;"
- "often use digital devices, including mobile phones, to take photographs of the guns and of themselves with guns," and "frequently send these photos to each

---

[1] Mr. Carter did not request a hearing and the government argues that no evidentiary hearing is required in this case. The Court agrees that no hearing is necessary to decide the issue because Mr. Carter does not raise "disputed issues of material fact that will affect the outcome of the motion to suppress." United States v. Hines, 628 F.3d 101, 105 (3d Cir. 2010) (citing United States v. Voigt, 89 F.3d 1050, 1067 (3d Cir. 1996)).

- other via text, email, social media, and messaging apps to boast of their firearms possession and/or to facilitate sales or transfers of firearms" and

- "often keep the contact information of the person who is supplying firearms . . . for future purchases or referrals," and "[m]any people do not dispose of their firearms-related records; they usually keep their records for long periods, often spanning several years."

ECF No. 100-1, at ¶¶ 15a.-c.  A magistrate judge would know from such averments that it is likely that a search of the iPhones would reveal evidence of the specific illegal firearms transaction (or information about said transaction) wherein Mr. Carter obtained the firearm seized upon his California state arrest.  Based upon averments within the CA Affidavit a magistrate judge could also reasonably infer that the three seized iPhones would likely contain evidence of:

- the identity of the person who provided the firearm to Mr. Carter;
- the identity of other persons engaged in the unlawful transfer of firearms to prohibited persons;
- the identify of persons prohibited from possessing firearms but who have acquired or are seeking to acquire a firearm; and
- evidence that Mr. Carter is a person engaged in the unlawful transfer of firearms to prohibited persons.

The Court finds that a magistrate judge, reviewing the California Affidavit as a whole and in a commonsense manner, could reasonably conclude that there is a "fair probability that contraband or evidence of a crime will be found" on the three iPhones.  Conley, 4 F.3d at 1205.  Therefore, the Court concludes that the California Magistrate Judge, who reviewed the CA Affidavit, had a substantial basis to conclude that probable cause existed authorizing the search of the three iPhones.  Gates, 462 U.S. at 236.  The federal search pursuant to the CA Warrant was therefore proper.  Accordingly, Mr. Carter's Motion to Suppress Evidence will be denied.

### B. The Pennsylvania Affidavit

The Pennsylvania Affidavit provided substantial factual averments of activities that had occurred over a defined period of time, and it provided sufficient probable cause for a magistrate judge to believe that contraband or evidence of a crime would be found through a search of the cell phones. Said Affidavit recounted facts about the lengthy Pennsylvania federal investigation, involving international shipments of several packages of fentanyl to the Pittsburgh area, including the package that had been delivered to Mr. Carter's grandmother. The PA Affidavit relayed that law enforcement tracked the delivery and subsequent multiple transfers of one of the packages to a residence where fentanyl, firearms, and ammunition were found. The Affidavit disclosed that agents confirmed that an IP address, assigned to Mr. Carter's California residence, was used to track fentanyl shipments. The Affidavit also provided abundant averments that Mr. Carter was involved in money laundering. Finally, Inspector Weckerly averred that, based upon her training and experience, she believed that evidence of crimes would be found on the cell phones. The Pennsylvania Magistrate Judge was presented with an Affidavit that contained detailed specificity about the meticulous nature of the Pennsylvania federal investigation. Inspector Weckerly's recitation of the events demonstrated a diligent investigation that was built on the facts as they were discovered during the course of the investigation. Thus, the PA Affidavit alone, and totally apart from the CA Affidavit and Warrant, provided more than sufficient probable cause for the Magistrate Judge to conclude that contraband or evidence of crimes would be found on all cell phones. Accordingly, Mr. Carter's Motion to Suppress Evidence will be denied.

### IV. Conclusion

For the reasons stated herein, Mr. Carter's Motion to Suppress Evidence will be denied.

## ORDER

AND NOW, this 14th day of June 2022 it is hereby ORDERED that Defendant Paris Carter's Motion to Suppress Evidence (ECF No. 100) is DENIED.

_____
Marilyn J. Horan
United States District Judge