IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Cr. No. 20-104 |
| | ) |
| PARIS CARTER | ) |

**Opinion and Order on Second Motion to Suppress Evidence**

Presently before the Court is Defendant Paris Carter's Motion to Suppress Evidence Obtained from the Eleven Devices Seized, with Brief in Support. ECF Nos. 204 & 205. The government filed a Response opposing the Motion, to which Mr. Carter filed a Reply. ECF Nos. 208, 209.

**I.    Consideration of Second Suppression Motion on the Merits**

Previously, in June 2022, the Court ruled on a separate suppression motion filed by Mr. Carter's first counsel.[1] Op. and Order, June 14, 2022, ECF No. 109. In his first suppression motion, Mr. Carter argued that an Affidavit in support of a search Warrant for three of Mr. Carter's iPhones, issued in the Central District of California, lacked probable cause. Mot. Suppress, ECF No. 100. Mr. Carter further argued that, because the California Warrant lacked probable cause, the subsequent Western District of Pennsylvania Warrants to search eleven electronic devices seized by California officials were tainted. *Id.* In addressing the issues presented in the first suppression motion, this Court found that both the California Affidavit and

---

[1] Mr. Carter was first represented by retained counsel, Stanton Levenson and Amy Carter, until they were permitted to withdraw in September 2022, due to irreconcilable differences. A Criminal Justice Act defense attorney, Komron Makoon, was appointed to represent Mr. Carter on September 28, 2022. Due to differences between Mr. Carter and Mr. Maknoon, he was permitted to withdraw representation in August 2023. Next, defense counsel Mark Sindler was appointed to represent Mr. Carter pursuant to the Criminal Justice Act. Mr. Sindler remained as counsel until August 2023, when Mr. Carter retained his current counsel, Vadim Glozman and Nicole Pijan.

the Pennsylvania Affidavit each independently provided probable cause to support the issuance of the respective search Warrants.  ECF No. 109.

In this second suppression motion, Mr. Carter contends that his motion concerns "factual and legal assertions separate and apart from the lone probable cause issue raised in his initial motion to suppress." Mot. Suppress ¶ 9.  Mr. Carter also challenges a second California Affidavit and search Warrant, not challenged in the first suppression motion, authorizing the search of Mr. Carter's rental residence.  Pursuant to said Warrant, law enforcement recovered eight additional electronic devices (six cell phones and two tablets).

In opposing the Motion to Suppress, the government relies on the fact that this Court has already found both the California Warrant to search three iPhones and the Pennsylvania Warrant to search eight electronic devices to be properly supported by probable cause.  ECF No.  208, at 20.  The government also argues that regardless of the arguments in the second motion, the good faith exception would permit introduction of the seized evidence.  *Id*.  Mr. Carter filed a Reply to the government's Response in which he argues that the Court must address the second suppression motion on the merits, despite the Court's decision denying Mr. Carter's first suppression motion filed by prior counsel.  He argues that consideration on the merits is necessary, in part, because the suppression motion presents new and nuanced challenges to the issuance of the Warrants.  He also argues that the Court should consider his motion on the merits in light of Mr. Carter's Sixth Amendment right to counsel of his choice and, in order to ensure that Mr. Carter has a full and fair opportunity to litigate his claims.

While the government did not submit a lengthy legal argument in opposition to Mr. Carter's second suppression motion, the government did not argue that the Court should deny the Motion without consideration of Mr. Carter's arguments.  Instead, the government advocates that

the Court deny the second suppression motion based on this Court's prior rulings, which the government implies, are responsive to Mr. Carter's arguments. The government also argues, briefly, that regardless of Mr. Carter's challenges to the subject Warrants, the good faith exception would apply. The Court will address Mr. Carter's arguments presented in his second suppression Motion on the merits. In doing so, however, the Court will rely in part on the prior rulings upholding the validity of the California Warrant to search the three iPhones and upholding the validity of the Pennsylvania Warrant to search the eleven electronic devices. After careful review of the briefs and the challenged Affidavits and Warrants, the Motion to Suppress will be denied.[2]

## II. Background

There are two California search warrants at issue. The first is a California Warrant authorizing law enforcement to search three iPhones seized from Mr. Carter's person when he was arrested on a federal felon in possession charge in California. The second California Warrant authorized law enforcement to search Mr. Carter's California rental residence based upon Mr. Carter's arrest on California state criminal charges. Relevant to the instant Motion, during the search of Mr. Carter's rental residence, law enforcement recovered eight additional electronic devices. Finally, Mr. Carter challenges eleven Pennsylvania Warrants authorizing the search of each of the above eleven electronic devices associated with Mr. Carter.

On February 28, 2018, Mr. Carter was arrested by Officers of the University of California Los Angeles Police Department in the Central District of California on state charges of false

---

[2] Mr. Carter requests a hearing. Pursuant to Federal Rule of Criminal Procedure 12(c)(1) a District Court "may [ ] schedule a motion hearing " on a motion to suppress. Fed. R. Crim. Proc. 12(c)(1). The Court finds that a hearing is not necessary because the issues raised concern matters of law and Mr. Carter does not raise "disputed issues of material fact that will affect the outcome of the motion to suppress." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010).

imprisonment and felony sexual battery. In a search incident to arrest, Officers seized a loaded handgun and three iPhones found on Mr. Carter. On March 1, 2018, Special Agent Jose Arellano of the Bureau of Alcohol, Tobacco, Firearms, and Explosives authored an Affidavit in support of an application to the federal court in California for a search Warrant to search the three iPhones. Def. Ex. B, ECF No. 206-1 (Under Seal). The Agent Arellano's Affidavit was also written to support Mr. Carter's arrest on the federal charge of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1).

Agent Arellano's Affidavit, in relevant part, sought authorization to search the three iPhones "for evidence, fruits, and instrumentalities" of violations of 18 U.S.C. § 922(g)(1). ECF No. 206-1, at ¶ 2. In said Affidavit, Agent Arellano reported that, in their search incident to Mr. Carter's arrest on California state charges, UCLA Police Officers recovered a loaded pistol and three iPhones. *Id.* at ¶¶ 5, 11.b. Agent Arellano also reported that Mr. Carter was a convicted felon. *Id.* at ¶¶ 5, 12. In Paragraph 15, he reported his knowledge of the following:

> a. People who are prohibited from owning guns but who own, sell, or buy guns often use digital devices, including mobile phones, to coordinate buying or selling those guns, and to promote their possession of guns to others. Such people often use calls, text messages, emails, social media, and messaging apps for these communications.
>
> b. People who are prohibited from owning guns but who own, sell, or buy guns often use digital devices, including mobile phones, to take photographs of the guns and of themselves with guns. They frequently send these photos to each other via text, email, social media, and messaging apps to boast of their firearms possession and/or to facilitate sales or transfers of firearms.
>
> c. People who purchase firearms illegally will often keep the contact information of the person who is supplying firearms to prohibited individuals for future purchases or referrals. Many people do not dispose of their firearms-related records; they usually keep their records for long periods, often spanning several years.

*Id.* at ¶ 15.  Agent Arellano also provided extensive presentation of his training and experience with digital devices and with forensic examination of the same. *Id.* at ¶ 16. Agent Arellano concluded that he believed that there was probable cause to believe that evidence of violations of 18 U.S.C. § 922(g)(1) would be found on the three iPhones. *Id.* at ¶ 16.  A Magistrate Judge approved the search warrant for the three iPhones recovered from Mr. Carter when he was arrested.  Ex. C, ECF No. 206-2 (Under Seal).

Next, UCLA Police Detective Justin Bell completed a sworn Affidavit in support of obtaining a search warrant to search Mr. Carter's rental property located on Beverlycrest Drive in Beverly Hills, California.  Ex. D, ECF No. 206-3 (Under Seal).  Detective Bell sought to search the residence based on Mr. Carter's arrest on the state charges of false imprisonment and felony sexual battery, as well as information learned from the investigation indicating that Mr. Carter engaged in similar activities or was seen in the area.  Specifically, Detective Bell referred to incidents occurring on February 5, 2018 (victim report), February 17, 2018 (UCLA Police issued a citation to Mr. Carter in the same area), February 25, 2018 (witness describes an encounter with Mr. Carter where he followed her), and February 26, 2018 (victim report). Detective Bell stated that the four incidents "are all within less than one half of one mile from each other," in the Westwood area, near the UCLA campus. *Id.* at 8.  Based on the four instances indicating Mr. Carter had been in the area, Detective Bell stated that Mr. Carter may have photographs, journals, notes, or maps of the area. *Id.* at 11.  Furthermore, Detective Bell stated that, based on his training and experience,

> cellular telephones contain location data which could show that the suspect was in the area at the date and time of each of these three instances.  Additionally, oftentimes, suspects that commit sexual crimes on multiple victims in the same area will take notes, photographs, or use mapping software on their cellular phones related to the area in order to scout out or document the location for future

>crimes. Any cellular phones in the possession of the suspect could contain this or similar evidence pertaining to this crime series.

*Id.*

Independent from the above-described California state and federal criminal investigations, Mr. Carter was under investigation for alleged drug trafficking and money laundering by agents from the United States Postal Inspection Service's Prohibited Mail Narcotics Team, the United States Custom and Border Control, and the Department of Homeland Security. Said investigation culminated in the instant Indictment charging Mr. Carter with one count of Conspiracy to Possess with Intent to Distribute and Distribution of 400 grams or more of Fentanyl and 100 grams or more of Acetyl Fentanyl, from January 2017 to February 2018; and one count of Conspiracy to Commit Money Laundering, from June 2017 to February 2018. ECF No. 8. The charges are, in part, supported by evidence seized pursuant to eleven Pennsylvania search Warrants that were issued based upon an Affidavit in support of an application to search the eleven electronic devices recovered from Mr. Carter in California. Def. Ex. F, ECF No. 206-5 (Under Seal).

United States Postal Inspector Lindsay Weckerly authored the Pennsylvania Affidavit. She explained that "CARTER is believed to be directly involved in the packaging, diluting, and manufacturing of fentanyl and the laundering of the proceeds of that criminal activity in the Western District of Pennsylvania and the Central District of California." *Id.* at ¶ 4. Inspector Weckerly states that as "a result of my training and experience, I am aware individuals involved in distributing illegal drugs commonly store or retain evidence of their involvement in drug trafficking on their cellular telephones and other electronic devices, including but not limited to incoming/outgoing call logs, contact lists, text messages, photographs, videos, and voicemails." *Id.* at ¶ 6.

Turning to the Pennsylvania federal investigation of Mr. Carter, the Affidavit recounts law enforcement's observations and activities concerning the interception and subsequent tracking of internationally shipped parcels containing fentanyl intended to be delivered to addresses in the Pittsburgh area. *Id.* at ¶¶ 7-25. In tracking the delivery of one of the fentanyl parcels, law enforcement learned that it was delivered to the residence of Mr. Carter's grandmother. *Id.* at ¶ 17. That package was picked up from the residence by an individual who drove it to Nolan Court in Homewood, Pennsylvania. *Id.* at ¶ 12. At Nolan Court, a second individual emerged from Mr. Carter's car, took control of the package, and transported it to a residence on Mohler Street. *Id.* at ¶¶ 12, 17. Pursuant to a search warrant, the Mohler Street residence was searched, revealing "numerous items of paraphernalia . . . including scales, fentanyl cut, stamp bags, a semiautomatic rifle," and a safe containing "ammunition and approximately 486 additional grams of fentanyl." *Id.* at ¶ 12. Inspector Weckerly averred that law enforcement knew that a high degree of coordination would have been required to facilitate the tracking, receipt, transfer, and delivery of the packages, and that such coordination requires extensive communication, typically through the use of cell phones. *Id.* at 15. Further, because the packages were also shipped internationally, determination of the delivery date would be difficult and not definitive without online tracking. *Id.* at ¶ 16. Online tracking also facilitates efficient and coordinated pick up and transfer of packages. *Id.*

Inspector Weckerly further averred that Mr. Carter was originally from Homewood, Pennsylvania, but that he also maintained a residence in California. *Id.* at ¶¶ 18, 20. Law enforcement was able to intercept and then identify the tracking device IP address associated

with five additional internationally shipped packages containing fentanyl. *Id.* at ¶ 20. The same IP address was also used to track two more packages shipped from the Pittsburgh area to Mr. Carter's residence address in California. *Id.* at ¶¶ 20-21, 25.

Inspector Weckerly's Affidavit also documents extensive evidence of money laundering obtained through the Pennsylvania federal investigation. *Id.* at ¶¶ 26-38. Inspector Weckerly also sets forth evidence garnered from Mr. Carter's social media accounts, which demonstrated indicia of money laundering and drug trafficking. Id. at ¶¶ 39-40. She recounts facts about Mr. Carter's California arrest and about the search incident thereto, wherein three iPhones were seized from Mr. Carter. *Id.* at ¶ 41. She reports that said iPhones were transferred to the United States Postal Inspection Service Pittsburgh Field Office. *Id.* The eight other electronic devices identified within Inspector Weckerly's Affidavit had been seized pursuant to the California search of Mr. Carter's California rental residence, and these devices were also transferred to the Pittsburgh Field Office. *Id.* at ¶ 45. Inspector Weckerly also provides her relevant training and experience concerning drug trafficking, money laundering, firearms offenses, and digital devices. *Id.* at ¶¶ 46-47. Inspector Weckerly believed that there was probable cause that evidence of drug trafficking and money laundering would be found on the electronic devices. *Id.* at ¶ 16.

### III. Applicable Law

The Fourth Amendment of the United States Constitution protects the public from unreasonable searches and seizures. When making a probable cause determination, a magistrate must ascertain "whether there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir.1993) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal citations omitted)). The test, as set forth in

*Gates*, requires that the issuing magistrate "make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" there is probable cause to support a warrant. *Id.* at 238. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." *Id.* at 236.

"The duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." Gates, 462 U.S. at 236 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner." *Conley*, 4 F.3d at 1208. A warrant must be upheld "as long as there is a substantial basis for a fair probability that evidence will be found." *Id.* at 1205. Of course, a reviewing court must not "simply rubber stamp a magistrate's conclusions." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir.1983).

**IV. Discussion**

Mr. Carter argues that each of the California Warrants "fail to establish a nexus between Mr. Carter's alleged offenses and the electronic devices seized as a result, and thus are devoid of probable cause." Mot. Suppress ¶ 6. He further argues that both California Affidavits are overbroad, lack particularity, and thus unlawfully permit an executing officer to seize items for which there is no probable cause. *Id.* Next, Mr. Carter argues that the Pennsylvania Affidavit "exceeded the parameters of the collective knowledge doctrine because it relied upon information gathered by different law enforcement agencies in relation to unrelated charges." *Id.* ¶ 7. As a result, Mr. Carter argues that the author of the Pennsylvania Affidavit lacked any independent basis as to the investigation and charges in California. *Id.* Therefore, Mr. Carter argues that law enforcement in Pennsylvania lacked a necessary independent basis demonstrating

that Pennsylvania law enforcement would have learned of the existence of the devices without the information provided from California law enforcement. Finally, he argues that the Pennsylvania Warrant, like the California Warrants, is impermissibly overbroad and lacks particularity, and thus is an impermissible general warrant. *Id.*

### A.   California Affidavit in Support of Searching Three iPhones

In his first Motion to Suppress, Mr. Carter argued that the California Affidavit in support of obtaining a Warrant to search the three iPhones recovered from Mr. Carter's person lacked probable cause because the Affidavit is based on general, boilerplate assertions, and because it lacks any specific factual averments to support a belief that evidence of violations of section 922(g)(1) would be found on the three iPhones. Mr. Carter also noted that the affiant already knew that Mr. Carter was a convicted felon who had recently been found in possession of a loaded firearm. Mr. Carter therefore argued that the evidence seized from the three iPhones must be suppressed. The Court rejected this argument and found that Agent Arellano's Affidavit supported the issuance of the Criminal Complaint and established probable cause for issuance of a search warrant to search the three iPhones.

In support of his second suppression motion, Mr. Carter argues that Agent Arellano's Affidavit fails to establish a nexus between Mr. Carter's alleged offenses and the electronic devices seized. Specifically, Mr. Carter's argument rests on his assertion that Agent Arrellano provided only conclusory allegations describing the conduct that people who unlawfully possess firearms might engage in on electronic devices. According to Mr. Carter, the Agent failed to provide a nexus between Mr. Carter and his conclusory allegations about "people" in general. Mr. Carter argues that the Agent is required to provide individualized facts about Mr. Carter connecting him with the alleged conclusory potential behavior generic "people" might engage in

on electronic devices. Def. Br. 9-10, ECF No. 205 (citing *United States v. Drakeford*, 992 F.3d 255 (4th Cir. 2021) (an officer's "bare suspicion" of criminal activity, without more, cannot establish probable case).

As outlined in the Court's prior Suppression Opinion, Agent Arellano identified the reasons why he believed evidence of a crime may be found on the three iPhones. He explained, based on his training and experience and knowing that Mr. Carter was a convicted felon prohibited from possessing a firearm who nonetheless *did* unlawfully possess a firearm, that such persons

- "often use digital devices, including mobile phones, to coordinate buying or selling those guns, and to promote their possession of guns to others,"

- "often use calls, text messages, emails, social media, and messaging apps for these communications;"

- "often use digital devices, including mobile phones, to take photographs of the guns and of themselves with guns," and "frequently send these photos to each other via text, email, social media, and messaging apps to boast of their firearms possession and/or to facilitate sales or transfers of firearms" and

- "often keep the contact information of the person who is supplying firearms . . . for future purchases or referrals," and "[m]any people do not dispose of their firearms-related records; they usually keep their records for long periods, often spanning several years."

ECF No. 206-1, at ¶¶ 15a.-c. Such averments establish a clear nexus between the alleged offense and the three iPhones sought to be searched. This is not a case where law enforcement proffered a "bare suspicion" that Mr. Carter was engaging in criminal activity. Mr. Carter was arrested on state criminal charges and, pursuant to a search incident to arrest, he was found to be unlawfully possessing a firearm. Such facts are individualized as to Mr. Carter and were the reason for Agent Arellano's Affidavit seeking to search the iPhones. Based on his training and experience, the Agent connected Mr. Carter's known criminal activity with common conduct that occurs on electronic devices by persons who engage in unlawful possession and/or transfer of firearms.

Having reviewed Agent Arellano's Affidavit in light of the present arguments in favor of suppression, the Court again concludes that probable cause exists upon which a magistrate judge could reasonably conclude that there is a "fair probability that contraband or evidence of a crime will be found" on the three iPhones. *Conley*, 4 F.3d at 1205. Accordingly, the Court concludes that the Affidavit provides probable cause to support the issuance of the search Warrant.

## B. California Affidavit in Support of Searching the Rental Residence

As with the Affidavit in support of searching the three iPhones, Mr. Carter argues that the Affidavit in support of searching Mr. Carter's rental residence fails to establish a nexus between Mr. Carter's alleged offenses and the eight electronic devices ultimately seized. The Affidavit refers to sexual offenses allegedly committed by Mr. Carter over a relatively short period of time (less than a month), in the same limited geographic location (less than one half of one mile), and occurring relatively close to Mr. Carter's rental residence. The investigation also revealed the following evidence linking the crimes to Mr. Carter. Law enforcement obtained eyewitness descriptions from two victims describing where the events took place, and describing the clothes Mr. Carter wore, his height, his complexion, and the car he drove. A witness who was followed by Mr. Carter, but not assaulted, gave substantially the same description. The investigation also revealed the similarity of the offender's method of unlawful conduct towards each of the victims. In his Affidavit, Detective Bell provided numerous and specific individualized facts about Mr. Carter and the alleged sexual offenses. Detective Bell provided the reviewing judge with the types of items he expected to recover from someone in Mr. Carter's position; that is, someone who may have committed multiple sexual offenses in a limited geographic area and within a short time frame. Detective Bell stated that Mr. Carter "may have photographs, journals, notes,

or maps" indicating his interest and familiarity with the area. ECF No. 206-3, at 11.

Furthermore, Detective Bell stated that, based on his training and experience, he knows that

> cellular telephones contain location data which could show that the suspect was in the area at the date and time of each of these three instances. Additionally, oftentimes, suspects that commit sexual crimes on multiple victims in the same area will take notes, photographs, or use mapping software on their cellular phones related to the area in order to scout out or document the location for future crimes. Any cellular phones in the possession of the suspect could contain this or similar evidence pertaining to this crime series.

*Id.* Therefore, the Court finds that the Affidavit provides a sufficient nexus between the individual alleged criminal actor (Mr. Carter) and the relevant items to be seized (electronic devices) and searched.

### C. The Pennsylvania Affidavit and Warrants

Mr. Carter challenges the Pennsylvania Affidavit's reliance on the two California criminal investigations, and the subsequent seizures of the electronic devices, as an illegitimate avenue to support probable cause to search the devices in Pennsylvania. He argues that Agent Weckerly lacked an independent basis upon which Pennsylvania law enforcement could demonstrate Pennsylvania law enforcement's own (or inevitable) discovery of the electronic devices. In support of this argument, he argues that the Pennsylvania Affidavit exceeds the scope of the "common knowledge doctrine" by relying on the California investigations of Mr. Carter's state and federal criminal charges to provide probable cause to search the electronic devices in Pennsylvania, in furtherance of its drug trafficking and money laundering investigation.

The "collective knowledge" doctrine provides that the knowledge of some members of law enforcement may be imputed to others to support a finding of reasonable suspicion or probable cause. *United States v. Wilburn*, No. 2:18-CR-115, 2021 WL 1310423, at *9 (W.D. Pa.

Apr. 8, 2021) (citing *United States v. Whitfield*, 634 F.3d 741, 744 (3d Cir. 2010)). As an initial matter, the government does not rely on the collective knowledge doctrine to support a finding of probable cause in this case. Not only is there is no need for the government to invoke the collective knowledge doctrine to establish probable cause, the collective knowledge doctrine is inapplicable under the present facts.

Officer Weckerly did not rely on the California law enforcement officers' knowledge of the facts and circumstances of the California investigations and arrest of Mr. Carter or on California law enforcement's subsequent seizure of the eleven electronic devices to support the Affidavit for probable cause to *search* the devices. Officer Weckerly set forth the factual events that occurred in California, with respect to Mr. Carter and the seizure of his eleven electronic devices, because such information informs the reviewing magistrate judge of the provenance of the electronic devices sought to be searched. The magistrate judge is reviewing the Affidavit to determine if probable cause exists to *search* eleven electronic devices, therefore, how the devices were obtained and where they are presently located, is a fact "'that any reasonable person would know that a judge would want to know.'" *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (quoting *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000)).

In addition, at the time Officer Weckerly drafted the Affidavit, the relevant California events were completed; that is, the magistrate judge was presented with historical facts. Such facts were not based on speculation, belief, training, experience, or deductive reasoning. A reviewing magistrate judge would view the paragraphs in the Affidavit recounting the California investigations into Mr. Carter as past factual events that explain how and where Mr. Carter's devices were discovered. A magistrate judge reviewing the Pennsylvania Affidavit is not being asked to determine if probable cause existed in California to seize the devices. The subject

matter of the Affidavit and proposed search Warrant concerned a request to authorize law enforcement to search the devices for evidence of drug trafficking and money laundering. Nothing in the Affidavit indicates that Pennsylvania law enforcement was concerned with the charges of false imprisonment, sexual battery, or unlawful possession of a firearm filed against Mr. Carter in California. Under these circumstances, Officer Weckerly did not rely on California law enforcement's "collective knowledge" to establish probable cause to *search* the devices in Pennsylvania. For the above reasons, the collective knowledge doctrine is inapplicable to the Pennsylvania Affidavit. In addition, the doctrine is inapplicable because there is no evidence of law enforcement coordination between California and Pennsylvania, wherein California law enforcement's knowledge was relayed to their Pennsylvania counterparts, and such knowledge supported probable cause to *search* the devices in Pennsylvania. As stated, California law enforcement provided facts as to how the subject devices were obtained. As explained in the Court's prior Opinion, the Pennsylvania Affidavit sufficiently provides an independent basis to support probable cause to search the electronic devices.

### D. Whether the Warrants are Unconstitutionally Overbroad

Finally, Mr. Carter argues that suppression is required because the California Warrants and the Pennsylvania Warrant are facially overbroad, lack particularity, and unlawfully permit the seizure of items for which there is no probable cause. Mr. Carter also argues that the Pennsylvania Warrant is an impermissible general warrant.

#### 1. General Warrants and Overbroad Warrants

The United States Court of Appeals for the Third Circuit explains that a "general warrant is a warrant that authorizes 'a general exploratory rummaging in a person's belongings.'" *United*

*States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971).

> The Fourth Amendment seeks to prevent general warrants by requiring all warrants to contain a "particular description" of the things to be seized. The particularity requirement "makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."

*Christine*, 687 F.2d at 752, quoting *Marron v. United States*, 275 U.S. 192, 196 (1927). "In determining whether a warrant is general, courts focus on the level of direction given to the executing officers and the level of discretion required of them in conducting the search." *United States v. Wecht*, 619 F.Supp.2d 213 226 (W.D. Pa. 2009), citing *United States v. Leveto*, 540 F.3d 200, 211 (3d Cir. 2008). All evidence seized pursuant to a general warrant is subject to suppression. *Christine*, 687 F.2d at 758; *United States v. Yusuf*, 461 F.3d 374, 393 n. 19 (3d Cir. 2006) ("the only remedy for a general warrant is to suppress all evidence obtained thereby").

On the other hand, "[a]n overly broad warrant 'describe[s] in both specific and inclusive generic terms what is to be seized,' but it authorizes the seizure of items as to which there is no probable cause." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 149 (3d Cir. 2002), quoting *Christine*, 687 F.2d at 753–54. "The Fourth Amendment dictates that a magistrate may not issue a warrant authorizing a search and seizure which exceeds the ambit of the probable cause showing made to him." *Christine*, 687 F.2d at 753. "'(A)n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause upon which the warrant is based.'" *Id.*, quoting 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, s 4.6, at 97 (1978). Accordingly, a district court determines whether a warrant is overbroad "by measuring the scope of the search and seizure authorized by the warrant against

the ambit of probable cause established by the affidavit upon which the warrant issued." *Christine*, 687 F.2d at 753. "[A]n overly broad warrant can be redacted to strike out those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment." *Yusuf*, 461 F.3d at 393 n. 19. "Evidence seized pursuant to an overly broad warrant need not be suppressed if the good faith exception applies." *$92,422.57*, 307 F.3d at 149.

### 2. The Pennsylvania Warrant

With respect to the Pennsylvania Warrant, Attachment A specifically describes the individual devices to be searched. Attachment B of the Warrant specifically limits the items to be seized from the devices to materials constituting evidence, instrumentalities, or fruits of violations of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1)), unlawful use of a communication telephone to facilitate the distribution of a controlled substance in violation of 21 U.S.C. § 843(b), conspiracy to distribute and to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. § 846, and money laundering in violation of 18 U.S.C. §§ 1956 and 1957. Attachment B further limits the type of item to be seized from the devices to the following:

   a) the cellular telephone numbers of the search locations;
   b) navigation, mapping, and GPS files contained within the search locations;
   c) incoming/outgoing call log and associated numbers;
   d) incoming/outgoing text messages (in final or draft form);
   e) incoming/outgoing e-mails (in final or draft form);
   f) Online/social media postings;
   g) Internet search history information;
   h) incoming/outgoing voice messages;
   i) photographs/videos; and
   j) any and all other electronic media stored data inside the search locations utilized for communication and data saving purposes, as well as documents relating thereto - (this warrant and affidavit also request permission to search the content of the aforementioned electronic media search locations).

The Court recognizes that an individual may place a vast amount of information contained on an electronic device, however, the types of information to be seized from the electronic devices here is supported by Agent Weckerly's Affidavit, in which she carefully connects the type of information produced and maintained by a person involved in the target criminal acts to the storing of such information on an electronic device.  Moreover, as indicated in the Affidavit, electronic devices contain several native applications that may be used in furtherance of criminal acts, such as, the phone, text messaging, maps, note taking, and others.  The Affidavit also referred to third-party applications are often downloaded onto a device and used by an actor in furtherance of criminal conduct.  Thus, the nature of an electronic device necessarily provides a potential criminal actor with a nearly limitless variety of means and methods to further their criminal activity, to broadcast their success in criminal activity, and to conceal evidence of their criminal activity, to name a few.  Under these circumstances, and considering Agent Weckerly's comprehensive and careful Affidavit, the Court does not conclude that the Pennsylvania Warrant is overbroad, lacks particularity, or is an impermissible general warrant.

### 3.   The California Warrants

The Court need not set forth a lengthy analysis as to the two California Warrants.  First, even if the Warrants were overboard or lacked particularity, the good faith exception would apply permitting the introduction of the seized items.  Second, the critical warrant in this case is the Pennsylvania Warrant, which would still be valid, as said Warrant independently establishes probable cause to search the devices.  Finally, the Court concludes that the California Warrants do not lack particularity and are not overbroad.  As to both California Warrants, for the same reasons provided with regard to the Pennsylvania Warrant, the items to be searched for in the electronic devices are specifically and properly linked to the alleged crimes being investigated.

## IV. Conclusion

For the reasons stated herein, Mr. Carter's second Motion to Suppress Evidence will be denied.

## ORDER

AND NOW, this 9th day of February 2024 it is hereby ORDERED that Defendant Paris Carter's Motion to Suppress Evidence Obtained from the Eleven Devices Seized (ECF No. 204) is DENIED.

Marilyn J. Horan
United States District Judge